**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| KATHY HALL-GORDON, | |
| Plaintiff, | Civil Action No.: |
| v. | |
| BIBB COUNTY SCHOOL DISTRICT, | 5:21-cv-00143 |
| Defendant. | **JURY TRIAL DEMANDED** |

**COMPLAINT**

COMES NOW, Plaintiff Kathy Hall-Gordon, and brings this action pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, as amended, the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq*., and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. Plaintiff alleges that Defendant Bibb County School District subjected Plaintiff to discrimination based disability, including through its failure to provide a reasonable accommodation, subjected Plaintiff to retaliation after she engaged in protected activities, and failed to provide compensation to Plaintiff at the overtime rate, respectfully showing the Court as follows:

**JURISDICTION AND VENUE**

1.

This Court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. §§ 1331 & 1343 and the enforcement provisions of the Americans with Disabilities Act and the Fair Labor Standards Act.

2.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff is employed, and the events underlying this action occurred, in Macon, Bibb County, Georgia, which is located within this judicial district.

**PARTIES**

3.

Plaintiff Kathy Hall-Gordon (hereinafter, "Plaintiff" or "Hall-Gordon") is a citizen of the United States and a resident of Georgia.  At all times relevant to this suit, Ms. Hall-Gordon has been employed with Defendant Bibb County School District.

4.

At all relevant times, Ms. Hall-Gordon was considered a covered, non-exempt employee under the Americans with Disabilities Act, the Rehabilitation Act, and the Fair Labor Standards Act.

5.

Defendant Bibb County School District (hereinafter, "Defendant") is a local school district created under the Constitution and laws of the State of Georgia.  Defendant has the capacity to sue and be sued by special acts of the legislature of the State of Georgia.

6.

Defendant may be served with process through its chief executive officer pursuant to O.C.G.A. § 9-11-4(e).  Defendant's chief executive officer is its Superintendent, Dr. Curtis Jones, Jr., located at 484 Mulberry Street, Macon, Bibb County, Georgia 31201.

7.

Defendant has employed in excess of 15 employees, working for at least 20 calendar weeks, in 2020 and preceding years.  Defendant is a covered employer within the meaning of the Americans with Disabilities Act.  Defendant is also a covered employer under the Rehabilitation Act because Defendant receives federal grants of assistance and otherwise has contracts with the federal government.

8.

Defendant is a covered enterprise under the Fair Labor Standards Act.

## STATEMENT OF FACTS

9.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 8, as if the same were set forth herein.

10.

Ms. Hall-Gordon suffers from several diagnosed conditions that have resulted in severe pain and the physical deterioration of both of her knees.  Specifically, she has tears in her menisci, severe degenerative osteoarthritis in the medial and lateral compartments, lateral subluxation of the tibia in relation to the knee joint, and a degenerating patella.

11.

The aforementioned medical conditions, individually and collectively severely impact Ms. Hall-Gordon's ability to perform major life activities such as lifting, performing manual tasks, reaching, sitting, sleeping, standing, walking, and working.

12.

As a result of these conditions, Ms. Hall-Gordan has been advised by her medical providers to avoid lifting objects in excess of ten pounds, prolonged standing, and climbing. Consistent with her climbing restriction, Ms. Hall-Gordon has been advised to avoid ladders.

13.

Ms. Hall-Gordan has been employed with Defendant in its Technology Department for nearly thirty years.  At all times at issue, Ms. Hall-Gordon's performance has been exemplary.

14.

Prior to December 2019, Ms. Hall-Gordon served as a Systems Administrator II (hereinafter, "Sys-Admin II"). According to her job description, the Sys-Admin II reports directly to the Director of Technology Services and is considered exempt from overtime.

15.

The essential duties of this position included communicating with vendors, providing customer support to all of Defendant's employees, providing technicians with support and training, and installing, maintaining, and upgrading technology.

16.

Ms. Hall-Gordon often came into work early or stayed well into the evening to do her duties, and Defendant was aware that she frequently worked far in excess of forty hours per week.

17.

Ms. Hall-Gordon was qualified for her position and was able to perform the essential duties and responsibilities of the position as listed in the job description.  In and before February 2019, Ms. Hall-Gordon consistently received "Satisfactory," "Proficient," and "Exemplary" ratings on her appraisals and evaluations.

18.

Defendant asserted during the administrative proceedings that Ms. Hall-Gordon was not performing the duties of a Sys-Admin II.  Instead, Defendant contended that Ms. Hall-Gordon was performing the duties of a technician.

19.

According to Defendant, technicians were assigned to and provided general support for their schools.

20.

Defendant has been aware of Ms. Hall-Gordon's medical conditions and her resulting physical limitations.

21.

In late 2018, Defendant told employees in its Technology Department that it was going to begin to require said employees to perform certain tasks that required the use of a ladder.

22.

However, the duties requiring a ladder were neither listed in Ms. Hall-Gordon's nor other employee's job descriptions.

23.

Using a ladder was never an essential function of Ms. Hall-Gordon's position

24.

Still, Ms. Hall-Gordon knew that her medical provider had advised her not to climb ladders. As a result, she submitted an "Employee Request for Reasonable Accommodation," which Defendant's Human Resources Department acknowledged receipt on December 20, 2018.

25.

Specifically, Ms. Hall-Gordon and her physician used that form to request that Defendant excuse Ms. Hall-Gordon from climbing ladders and lifting more than ten pounds and allow Ms. Hall-Gordon to wear a knee brace.

26.

After Ms. Hall-Gordon had submitted her request for reasonable accommodation, her direct supervisor Melva Sullivent (hereinafter, "Sullivant") and Executive Director of Technology Rose Powell (hereinafter, "Director Powell") told Ms. Hall-Gordon that, if she were not able to climb ladders, she would have to go on leave so she could have knee surgery.

27.

Similarly, a representative from Human Resources told Ms. Hall-Gordon that, if she could not climb ladders, she would have to go out on leave.

28.

However, Ms. Hall-Gordon and her physician had decided that knee surgery was not appropriate at that time.

29.

In February 2019, in a Mid-Year Evaluation, Ms. Sullivant rated Ms. Hall-Gordon's performance as "Proficient."

30.

By March 2019, Defendant had still not provided a reasonable accommodation and Ms. Hall-Gordon's supervisors consistently maintained that Ms. Hall-Gordon was going to have to climb ladders, and if she were not able to do so, she would either have to get knee surgery on a period of leave or she would have to *retire from her position*.

31.

On March 6, 2019, Ms. Hall-Gordon, through counsel, sent correspondence to Defendant's then-Human Resources Director Paige Busbee, following up on her December 2018 request for a reasonable accommodation.

32.

This correspondence explicitly referenced the aforementioned comments made by the Human Resources representative.

33.

The next day, Defendant's General Counsel contacted Ms. Hall-Gordon's attorney and made assurances that the accommodation request would be addressed and the requested accommodation should not be a problem to provide.

34.

The General Counsel was told that Ms. Hall-Gordon's supervisors had denied the request for an accommodation and further stated that she would have to take leave to get surgery.

35.

For several weeks, Defendant failed to follow up about the accommodation as promised.

36.

Ms. Sullivant and Director Powell knew that Ms. Hall-Gordon and her counsel had discussed the failure to accommodate with the Defendant's HR Director and General Counsel.

37.

On June 6, 2019, Director Powell met with Ms. Hall-Gordon to discuss her accommodations in a meeting that lasted for well over one hour.

38.

Director Powell explained that she had misunderstood Ms. Hall-Gordon's request and thought she was only seeking the use of a standing desk.

39.

Director Powell explicitly stated, "I'm saying that the accommodations that you requested are not … cannot be made for you."

40.

When Ms. Hall-Gordon suggested alternatives, Director Powell said that "there's a lot of things that we will not be able to accommodate" in Ms. Hall-Gordon's position.

41.

Director Powell said that "the only accommodation that [Ms. Hall-Gordon] asked for for [her] job is … has been determined an unreasonable accommodation."

42.

The two reviewed the restrictions listed by Ms. Hall-Gordon's medical provider, to which Director Powell stated, "… we cannot accommodate your positions with these restrictions. Period."

43.

During this meeting, Director Powell stated, "[w]hat we're saying is, we cannot accommodate your restrictions in your job."

44.

During this meeting, Director Powell stated, "[b]ecause it is a critical position, if we can't accommodate it, I… we're gonna have to find another solution."

45.

During this meeting, Director Powell stated, "… I think what [HR Director Paige Busbee] was trying to explain to you is we cannot accommodate these restrictions in your positions because the job duties and responsibilities clearly say that you have to do these things to do your job."

46.

During this meeting, Director Powell reviewed the restrictions and stated, "'[n]o ladder climbing, no lifting over ten pounds, must wear knee brace,' Okay? We can't accommodate that. We can't … I mean, the knee brace is fine, but you are going to have to lift and you're going to have to climb a ladder. If you get a [work] ticket that says that you have to climb a ladder, I mean, nobody else can do that for you."

47.

During this meeting, Director Powell stated, "I know that you want to work, but I know that you have sick leave. You've got other options that you can take care of. You've got disability options. You've got, um, FMLA options. Shoot, you've probably got enough sick leave like I do to retire already."

48.

During the June 6, 2019 meeting, Director Powell made it abundantly clear to Ms. Hall-Gordon that going on medical leave or retiring were Ms. Hall-Gordon's only two options.  Director Powell also said that she did not know if there was another position with Defendant that could accommodate, "[b]ut right now, that's the way it is, we cannot accommodate."

49.

Ms. Sullivant was also present during the June 6, 2019 meeting.

50.

On June 24, 2019, Ms. Hall-Gordon received an Annual Review where Ms. Powell rated her as "Needs Development" for the first time in her tenure.

51.

The Annual Review specifically acknowledges that Ms. Hall Gordon had "been working hard trying to care of [her] schools [sic] needs" and that "[i]t is evident that [she has] a strong desire to do [her] job."

52.

However, the same Annual Review goes on to say that "[p]hysical limitations prevent [Ms. Hall-Gordon] from accomplishing all of [her] work" and references the fact that she was not using a ladder.

53.

Meanwhile, around the same time, all of the principals and/or media specialists for the schools that Ms. Hall-Gordon was assigned completed surveys saying that they were satisfied with Ms. Hall-Gordon and requested that she return the next school year.

54.

After the June 6, 2019 meeting, Ms. Hall-Gordon felt that she was being discriminated against and she ultimately filed her Charge of Discrimination with the Equal Employment Opportunity Commission on July 3, 2019.

55.

Ms. Sullivant and Director Powell were not only aware of the complaints that Ms. Hall-Gordon submitted to the HR Director, they knew of the Charge of Discrimination that she filed, mentioning what they had said.

56.

As a result, the supervisors created a list of supposed deficiencies in Ms. Hall-Gordon performance that they provided to the new Director of Human Resources Mac Bullard (hereinafter, "HR Director Bullard").

57.

The supposed deficiencies in Ms. Hall-Gordon's performance were false.

58.

On August 6, 2019, Ms. Hall-Gordon was abruptly called by Defendant's central office and told to come in immediately for a meeting with her supervisors and HR Director Bullard.

59.

Since Ms. Hall-Gordon had not been given any prior notice of this meeting or the alleged deficiencies in her performance, she was unable to prepare for the meeting or bring any documentation she had refuting the false allegations.

60.

Ms. Hall-Gordon was given thirty days to make improvements in her performance.

61.

Yet, thirty-one days later, on September 6, 2019, Ms. Hall-Gordon and her counsel met with Defendant's General Counsel and HR Director Bullard for a meeting that the parties had agreed to schedule in lieu of participating in a mediation with the Equal Employment Opportunity Commission.

62.

During this meeting, Defendant assured Ms. Hall-Gordon that she would not be subjected to retaliation for requesting accommodations, complaining about her supervisors' responses, or filing her Charge of Discrimination.

63.

Ms. Hall-Gordon responded to this assurance explaining that she felt that she was already being subjected to retaliation, particularly from Director Powell, and that she was "never more fearful for [her] job."

64.

The thirty-day improvement requirement was not mentioned during the September 6th meeting, which is because the improvement plan was not created in good faith and was intended merely as a mechanism to justify an adverse action.

65.

On November 6, 2019, Ms. Hall-Gordon was called into another meeting with HR Director Bullard, Director Powell, and Ms. Sullivant. Defendant had, once again, failed to provide any advance notice.

66.

During this November 6th meeting, Ms. Hall-Gordon was interrogated about allegations that Ms. Sullivant and Director Powell had clearly designed to make it appear – falsely – that Ms. Hall-Gordon was not adequately performing her duties.

67.

On November 25, 2019, Defendant spoke to Ms. Hall-Gordon, both through counsel. Defendant explained that Ms. Hall-Gordon was having a "performance issue" even after being given an accommodation.

68.

Yet, Defendant had not discussed or provided any accommodations as of November 25, 2019.

69.

HR Director Bullard asked Ms. Hall-Gordon to meet on December 10, 2019, but did not explain the purposes of this meeting.  During this meeting, Defendant informed Ms. Hall-Gordon of several adverse actions being taken against her.

70.

Specifically, Defendant demoted Ms. Hall-Gordon from Sys-Admin II to a Records Clerk and converted her from being a salaried employee (GR066 Step 12) to one making an hourly wage (GR044 Step 12).

71.

To make matters worse, even after the demotion, Ms. Hall-Gordon is still being supervised by the same person who denied the requested accommodation, was the subject of her complaints, and who was largely responsible for the retaliation.

Procedural/Administrative Background

72.

On or about July 3, 2019, Ms. Hall-Gordon submitted her Charge of Discrimination to the Equal Employment Opportunity Commission (hereinafter, "EEOC"), alleging that she had been

subjected to discrimination.  The EEOC assigned Ms. Hall-Gordon Charge Number 410-2019-06614.

73.

On or about January 27, 2020, Ms. Hall-Gordon submitted her Amended Charge of Discrimination to the EEOC, asserting the additional claim that Defendant had been subjecting her to retaliation, including her demotion.

74.

Defendant had actual notice of the EEOC Charge, participated in the administrative proceedings, and was represented by counsel at that time.

75.

On April 21, 2020, Ms. Hall-Gordon requested that the EEOC issue a "Right to Sue letter."

76.

The EEOC forwarded Ms. Hall-Gordon's request for a Right to Sue letter to the Department of Justice on September 20, 2020.  On January 25, 2021, Ms. Hall Gordon received the Right to Sue letter from the Department of Justice.

77.

Ms. Hall-Gordon has exhausted her administrative remedies as to her Charge of Discrimination and she is filing the instant action within ninety days of the issuance of a Dismissal and Notice of Rights.

### COUNT I:
### DISCRIMINATION IN VIOLATION OF
### THE AMERICANS WITH DISABILITIES ACT

78.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in

Paragraphs 1 through 77, as if the same were set forth herein.

79.

The Americans with Disabilities Act prohibits covered entities from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

80.

As alleged herein, Defendant and Plaintiff are a covered, nonexempt employer and non-exempt employee under the ADA, respectively. See 42 U.S.C. § 12111.

81.

As alleged herein, Plaintiff has been employed with Defendant for nearly thirty years served in the role of Systems Administrator II.  Plaintiff had been performing her duties in that role, and was otherwise qualified and able to perform the essential functions of her job, with or without a reasonable accommodation.

82.

As alleged herein, Plaintiff has a disability, a history of a disability, and was perceived by Defendant as having a disability, that substantially limits a number of major life activities.

83.

Specifically, Plaintiff suffers from tears in her menisci, severe degenerative osteoarthritis in the medial and lateral compartments, lateral subluxation of the tibia in relation to the knee joint, and a degenerating patella.  All of these conditions, individually and in the aggregate, substantially limit several major life activities for Plaintiff such as lifting, performing manual tasks, reaching, sitting, sleeping, standing, walking, and working.

84.

Defendant was aware of Plaintiff's disabilities.

85.

As alleged herein, Defendant attempted to force Plaintiff to go on leave and have unnecessary surgery solely because of Plaintiff's disability.

86.

As alleged herein, Defendant attempted to force Plaintiff to retire from her position solely because of Plaintiff's disability.

87.

As alleged herein, Defendant provided Plaintiff with poor ratings on an Annual Review solely because of Plaintiff's disability, which is further evidenced by the fact that the Annual Review explicitly references Plaintiff's "physical limitations."

88.

As alleged herein, Defendant demoted Plaintiff and reduced her compensation and benefits solely because of Plaintiff's disability.

89.

Plaintiff has been injured by Defendant's discrimination based on disability, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including compensatory damages, reinstatement, backpay, injunctive relief, punitive damages, and reasonable attorney's fees and costs of litigation, in an amount to be proven at trial.

## COUNT II:
## FAILURE TO PROVIDE A REASONABLE ACCOMMODATION
## IN VIOLATION OF THE REHABILITATION ACT

90.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 77, as if the same were set forth herein.

91.

The Rehabilitation Act of 1973 prohibits discrimination based on disability in "any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency…" 29 U.S.C. § 794(a).

92.

Defendant, as a program receiving Federal financial assistance both directly and indirectly from the United States Department of Education, and Plaintiff, as an employee of Defendant, are a covered entity and individual, respectively, under the Rehabilitation Act.

93.

The Rehabilitation Act expressly incorporates the standards used in Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq.* 29 U.S.C. § 794(d).

94.

For the reasons set forth in Count I, *supra*, Defendant discriminated against Plaintiff based on disability.

95.

Plaintiff has been injured by Defendant's discrimination due to disability, and Plaintiff is entitled to all damages available under the Rehabilitation Act, in an amount to be proven at trial.

## COUNT III:
## FAILURE TO PROVIDE REASONABLE ACCOMMODATION
## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

96.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 77, as if the same were set forth herein.

97.

The Americans with Disabilities Act prohibits covered entities from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

98.

Discrimination based on disability includes an employer's failure to make a "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

99.

As alleged herein, Defendant and Plaintiff are a covered, nonexempt employer and non-exempt employee under the ADA, respectively. See 42 U.S.C. § 12111.

100.

As alleged herein, Plaintiff has been employed with Defendant for nearly thirty years served in the role of Systems Administrator II.  Plaintiff had been performing her duties in that role, and was otherwise qualified and able to perform the essential functions of her job, with or

without a reasonable accommodation.

101.

As alleged herein, Plaintiff has a disability, a history of a disability, and was perceived by Defendant as having a disability, that substantially limits a number of major life activities.

102.

Specifically, Plaintiff suffers from tears in her menisci, severe degenerative osteoarthritis in the medial and lateral compartments, lateral subluxation of the tibia in relation to the knee joint, and a degenerating patella.  All of these conditions, individually and in the aggregate, substantially limit several major life activities for Plaintiff such as lifting, performing manual tasks, reaching, sitting, sleeping, standing, walking, and working.

103.

Defendant was aware of Plaintiff's disabilities and her need for a reasonable accommodation.

104.

Moreover, Plaintiff requested an accommodation for her disability on a number of occasions. Specifically, Plaintiff requested that Defendant adjust her work responsibilities to the extent such responsibilities would otherwise require the use of a ladder.

105.

The accommodation requested was available, would have been effective, and would not have posed an undue hardship on Defendant.

106.

Defendant not only failed to provide to provide the requested accommodation, Defendant told Plaintiff that she would not be accommodated.

107.

Instead of providing any accommodation, Defendant directed Plaintiff either to take leave to have surgery that neither she nor her medical provider felt was necessary or retire.

108.

In addition to Defendant's failure to provide a reasonable accommodation, Defendant refused to engage Plaintiff in the interactive process, despite Plaintiff repeated efforts to do so.

109.

Plaintiff has been injured by Defendant's discrimination based on disability due to its failure to provide a reasonable accommodation, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including compensatory damages, reinstatement, backpay, injunctive relief, punitive damages, and reasonable attorney's fees and costs of litigation, in an amount to be proven at trial.

**COUNT IV:**
**FAILURE TO PROVIDE A REASONABLE ACCOMMODATION**
**IN VIOLATION OF THE REHABILITATION ACT**

110.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 77, as if the same were set forth herein.

111.

The Rehabilitation Act of 1973 prohibits discrimination based on disability in "any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency…" 29 U.S.C. § 794(a).

112.

Defendant, as a program receiving Federal financial assistance both directly and indirectly from the United States Department of Education, and Plaintiff, as an employee of Defendant, are a covered entity and individual, respectively, under the Rehabilitation Act.

113.

The Rehabilitation Act expressly incorporates the standards used in Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq.* 29 U.S.C. § 794(d).

114.

For the reasons set forth in Count III, *supra*, Defendant discriminated against Plaintiff based on disability due to its failure to provide a reasonable accommodation.

115.

Plaintiff has been injured by Defendant's discrimination due to its failure to provide a reasonable accommodation, and Plaintiff is entitled to all damages available under the Rehabilitation Act, in an amount to be proven at trial.

**COUNT V:**
**RETALIATION**
**IN VIOLATION OF AMERICANS WITH DISABILITIES ACT**

116.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 77, as if the same were set forth herein.

117.

The Americans with Disabilities Act prohibits covered entities from discriminating against any individual because such individual has opposed any act or practice made unlawful by the

Americans with Disabilities Act or because said individual has filed a Charge of Discrimination. 42 U.S.C. § 12203(a).

118.

As alleged herein, beginning on March 6, 2019, Plaintiff notified Defendant through its Human Resources Director and General Counsel, advising Defendant that the Human Resources Department had denied her request for a reasonable accommodation and Plaintiff that she would have to take a leave of absence instead.

119.

Soon thereafter, Plaintiff made a complaint to Defendant that her supervisor had denied Plaintiff's request for a reasonable accommodation and told her that she would have to take leave to get surgery or retire altogether.

120.

Plaintiff's opposition to Defendant's failure to provide a reasonable accommodation is a protected activity under the Americans with Disabilities Act.

121.

The supervisors at issue knew Plaintiff's complaints about them.

122.

On June 6, 2019, Plaintiff's supervisors told Plaintiff once again that Defendant would not accommodate Plaintiff's disabilities.

123.

As a result of Plaintiff's complaints about her supervisors, said supervisors gave Plaintiff a poor Annual Review on June 24, 2019 that did not accurately reflect Plaintiff's performance.

124.

Plaintiff had a good faith belief that she was being discriminated against based on disability.  As a result, she filed a Charge of Discrimination with the Equal Employment Opportunity Commission on July 3, 2019, explicitly discussing what the supervisors had said in denying Plaintiff's request for a reasonable accommodation.

125.

Plaintiff's supervisors became aware of her Charge of Discrimination and references to the supervisors.

126.

As a result, said supervisors submitted a list of supposed deficiencies in Plaintiff's performance, which were false and specifically intended to cause damage to Plaintiff's reputation or adverse consequences to her employment.

127.

Said supervisors were aware of the fact that Plaintiff complained to Defendant's leadership several more times over the subsequent months about her supervisors' refusal to accommodate her disability and retaliatory actions.

128.

As a result, said supervisors took additional measures to jeopardize Plaintiff's employment.

129.

Based solely on the supervisors' actions, Defendant demoted Plaintiff to an inferior position and reduced her compensation and benefits.

130.

Plaintiff has been injured by Defendant's retaliatory conduct, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including compensatory damages, reinstatement, backpay, injunctive relief, punitive damages, and reasonable attorney's fees and costs of litigation, in an amount to be proven at trial.

## COUNT VI:
## RETALIATION
## IN VIOLATION OF THE REHABILITATION ACT

131.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 77, as if the same were set forth herein.

132.

The Rehabilitation Act of 1973 prohibits discrimination based on disability in "any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency…" 29 U.S.C. § 794(a).

133.

Defendant, as a program receiving Federal financial assistance both directly and indirectly from the United States Department of Education, and Plaintiff, as an employee of Defendant, are a covered entity and individual, respectively, under the Rehabilitation Act.

134.

The Rehabilitation Act expressly incorporates the standards used in Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq.* 29 U.S.C. § 794(d).

135.

For the reasons set forth in Count V, *supra*, Defendant retaliated against Plaintiff as a result of her participation in protected activities.

136.

Plaintiff has been injured by Defendant's retaliation, and Plaintiff is entitled to all damages available under the Rehabilitation Act, in an amount to be proven at trial.

**COUNT VII:**
**FAILURE TO PAY OVERTIME PAY**
**IN VIOLATION OF THE FAIR LABOR STANDARDS ACT**

137.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 77, as if the same were set forth herein.

138.

Under the Fair Labor Standards Act, an employer must pay a rate of not less than one and one-half times an employee's regular rate for any time worked in excess of forty hours for any given workweek.  *See* 29 U.S.C. § 201(a)(1).

139.

As alleged herein, Defendant and Plaintiff are covered, non-exempt employer and employee under the Fair Labor Standards act, respectively.  *See* 29 U.S.C. § 201(a)(1).

140.

While Defendant classified Plaintiff's position as exempt, it has taken the position that she was performing duties that are normally assigned to a position that is not exempt from overtime.

141.

As alleged herein, Plaintiff frequently worked in excess of forty hours per workweek.

142.

Defendant was aware of the fact that Plaintiff worked in excess of forty hours per workweek.

143.

However, Defendant failed to compensate Plaintiff for any hours in excess of forty per workweek at the appropriate overtime rate.

144.

Defendant's conduct, as alleged herein, constitutes failing to provide overtime pay in violation of the Fair Labor Standards Act.

145.

Plaintiff has been injured by Defendant's actions and is entitled to an award of unpaid overtime compensation and all other damages allowed under the Fair Labor Standards Act for the period preceding two years prior to the filing of her initial action civil action, as well as reasonable attorney's fees and costs of litigation to be paid by Defendant pursuant to 29 U.S.C. § 216(b), in an amount to be proven at trial.

146.

The evidence will reflect the fact that Defendant willfully violated the Fair Labor Standards Act when it failed to compensate Plaintiff at the appropriate rate of overtime, and thus, Plaintiff should be permitted to recover all damages listed in the preceding paragraph for the period of three years prior to the filing of this action.

147.

Moreover, Defendant has acted in bad faith and did not have reasonable grounds to believe that its actions were not a violation of the Fair Labor Standards Act.

148.

To the extent that Defendant required Plaintiff to perform duties not traditionally associated with her role, rather those of a non-exempt employee, Defendant's violation of the Fair Labor Standards Act should be considered that its own making.

149.

This Court should exercise its sound discretion to award liquidated damages pursuant to 29 U.S.C. § 260, and should award to Plaintiff said liquidated damages in an amount equal to an award for unpaid overtime compensation.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kathy Hall-Gordon respectfully prays for the following relief:

1)      That Summons and Process be issued to Defendant Bibb County School District, and that said Defendant be served as provided by law;

2)      That this matter be tried before a jury;

3)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count I for discrimination based on disability, and grant Plaintiff all relief allowable under the Americans with Disabilities Act;

4)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count II for discrimination based on disability, and grant Plaintiff all relief allowable under the Rehabilitation Act;

5)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count III for discrimination based on disability based on Defendant's failure to provide a reasonable accommodation, and grant Plaintiff all relief allowable under the Americans with Disabilities Act;

6)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count IV for discrimination based on disability based on Defendant's failure to provide a reasonable accommodation, and grant Plaintiff all relief allowable under the Rehabilitation Act;

7)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count V for retaliation, and grant Plaintiff all relief allowable under the Americans with Disabilities Act;

8)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count VI for retaliation, and grant Plaintiff all relief allowable under the Rehabilitation Act;

9)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count VII for failure to compensate Plaintiff at the rate of overtime, and grant Plaintiff all relief allowable under the Fair Labor Standards Act, including, but not limited to, liquidated damages.

10)     For such other relief as this Court shall deem just and proper.

Respectfully submitted, this 23rd day of April, 2021.

KENNETH E. BARTON III
Georgia Bar No. 301171
M. DEVLIN COOPER
Georgia Bar No. 142447
JOHN M. MCCALL
Georgia Bar No. 778954
*Attorneys for Plaintiff*

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
keb@cooperbarton.com
mdc@cooperbarton.com
jmm@cooperbarton.com