**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **KATHY HALL-GORDON,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** **5:21-cv-00143-TES** |
| **BIBB COUNTY SCHOOL DISTRICT,** | |
| *Defendant.* | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this Complaint [Doc. 1], Plaintiff Kathy Hall-Gordon seeks to recover damages from Defendant Bibb County School District for numerous violations of federal law she allegedly suffered during her employment in its Department of Technology. Plaintiff alleges Defendant violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* Specifically, Plaintiff claims Defendant failed to provide reasonable accommodations for her disabilities, retaliated against her for making that request, and failed to pay her overtime compensation. Following discovery, Defendant filed the present Motion for Summary Judgment [Doc. 11], asking the Court to dismiss all claims against it. The motion has been briefed, and the Court denied Plaintiff's request for oral argument [Doc. 30], opting to rule solely on the

written arguments submitted in the parties' briefs.

A.  **Local Rule 56**

Before we get to the facts of this case, the Court must begin by noting several deficiencies in Plaintiff's response to this motion.

First, Local Rule 56 clearly mandates that a party responding to a motion for summary judgment must respond to "each of the movant's numbered material facts." LR 56, MDGa. Further, the Local Rules instruct that "[a]ll material facts contained in the movant's statement which are not specifically controverted by **specific citation to particular parts** [of the record] shall be deemed to have been admitted."[1] *Id*. (emphasis added). Lastly, the Local Rules preempt a non-moving party's claim of insufficient knowledge unless the party has "complied with the provisions of Rule 56(d) of the Federal Rules of Civil Procedure." *Id*. As an overarching rule, "statements in the form of issues or legal conclusions [. . .] will not be considered by the court." *Id*.

This rule isn't new, and it certainly isn't some recent requirement that the Court deviously sprung on practitioners in order to trick or trap them. No, Local Rule 56 is a longtime requirement with which all litigants must comply.[2] And, its purpose is clear: it "protects judicial resources by 'mak[ing] the parties organize the evidence rather than

---

[1] Local Rule 56 also encourages the use of "dates, specific page numbers, and line numbers …" when possible. And, as shown below, it was certainly possible for Plaintiff to have done so.

[2] *See Weil v. Neary*, 278 U.S. 160, 169 (1929) (holding that local rules have the "force of law," and compliance is mandatory.)

leaving the burden upon the district judge.'" *Reese v. Herbert*, 527 F.3d 1253, 1267–68 (11th Cir. 2008) (quoting *Alsina-Ortiz v. Laboy*, 400 F.3d 77, 80 (1st Cir. 2005)).[3]

To be sure, Plaintiff's counsel well knows the simple requirements of Local Rule 56. On at least two previous occasions, this court division has dealt with cases where he fell well short of the commands of Local Rule 56 and suffered the consequences of noncompliance.

First, in another employment discrimination case (before a different judge), Plaintiff's counsel faced a similar motion for summary judgment. In responding to the defendant's material facts, counsel offered broad, generic cites to a 249-page maze and left it to the court and opposing counsel to navigate a path forward. Instead of acknowledging and correcting the mistake, counsel later doubled down and insisted that the filing wasn't a "pleading," so it could not be subject to a motion to strike. As the court put it, Plaintiff's counsel deemed it "incumbent upon the [Defendant] and the [c]ourt [. . .] to sift through 249 pages to determine what portions [support the assertions]." Order, *Gray v. Bd. of Tr. of the Ga. Mil. Coll.*, No. 5:21-cv-00052-MTT (M.D. Ga. Mar. 7, 2022), ECF No. 33, p. 5. Only after the court issued an order to show cause did counsel cite to specific portions of the record to support the given assertions. The court determined that was "too little far too late." *Id*. The court sustained an objection to

---

[3] *See also Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1032 (8th Cir. 2007) ("Courts have neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or defense.").

the offending responses and did not consider those in ruling on the motion. The court then—like the Court today—recognized that this is not "a case of [counsel] misunderstanding the rule." *Id*. Rather, it was counsel "presum[ing] the Court would do the work for [him.]" *Id*.

Second, counsel faced a similar situation before this Court, and he was again warned about insufficient compliance with Local Rule 56. *See Assad v. Air Logistics & Eng'g Sol., LLC*, No. 5:20-cv-00135-TES, 2022 WL 682377 (M.D. Ga. Mar. 7, 2022). There, counsel opposed a motion for summary judgment, and again, offered citations that had "little to no bearing on the statement." *Id*. at *5. Like before, counsel sent the Court on a chase with no direction. In attempting to controvert the facts, as required by Local Rule 56, counsel did not offer relevant evidence or citations. Instead, counsel hoped the Court would accept the assertions and not double check his work. The Court warned that when "Plaintiff responds in such an impermissible manner, the Court must deem those statements admitted." *Id*. at *6.

Undeterred from the admonitions in the cases cited above, Plaintiff's lawyer decided to ignore Local Rule 56 once again. Plaintiff's Response to Defendant's Statement of Material Facts [Doc. 21-1] fails to cite to specific portions of the 250-page package he submitted. Let's highlight just a few.

Several of Plaintiff's "responses" take up nearly three pages with only vague references to the record. *See* [Doc. 21-1, ¶¶ 20, 31–32, 35]. Even worse, several responses

4

consist of nothing but pure argument. *See* [Doc. 21-1, ¶¶ 16, 41, 43, 45]. In fact, Plaintiff's brief consists of only 12 pages, and the vast majority of that sets out the legal standard applicable to each cause of action and motions for summary judgment in general. Rather than clearly and concisely set out Plaintiff's legal position in her brief, her lawyer chose to scatter some of her various legal arguments throughout her response to Defendant's Statement of Material Facts and bury the rest in the dense package of exhibits he attached to it. An attorney just can't dump 250 pages of documents on the Court, sprinkle in a few legal conclusions, embed a few legal arguments, and expect the Court and opposing counsel to sift through it all in order to cobble together his client's position.

Oh, but there's more.

Numerous responses include conclusions of fact and law with no citations to support the assertions. Namely, Response 51 includes a textbook example of a legal conclusion: "Ms. Powell was motivated by retaliatory motive[.]" [Doc. 21-1, ¶ 51]. Again, in Response 16, Plaintiff offers no citation to the record, asking the Court to just disregard Defendant's evidence and blindly accept that a "clear dispute as to [Plaintiff's] performance in the role of Systems Administrator II." [Doc. 21-1, ¶ 16]. Some of Plaintiff's responses rely solely on the absence of words or assertions in Defendant's proffered fact, again totally omitting any evidence to contradict or support the adverse position. Plaintiff had the opportunity to support her case with evidence to

contradict such assertions with something as simple as an affidavit from the Plaintiff herself. But, she didn't.[4]

Not to be inconsistent, Plaintiff also ignored Local Rule 56 in her own Statement of Material Facts as it lacks citations to nearly anything in the record aside from her Complaint and her deficient response to Defendant's facts. *See* [Doc. 22]. These totally unsatisfactory citations clearly failed to point the Court to any evidence that supports the assertions or highlights genuine issues of fact that the Plaintiff contends must be resolved at trial.

When a party violates Local Rule 56, the consequence is clear: the Court deems those asserted material facts that weren't properly controverted as admitted. *See Jones v. Gerwens*, 874 F.2d 1534, 1537 n.3 (11th Cir. 1989). As such, the Court admits those facts in Defendant's Statement of Material Facts which are either undisputed or uncontroverted by virtue of Plaintiff's noncompliance with Local Rule 56.[5]

B.   <u>Background</u>

Defendant employed Plaintiff in its Department of Technology as a Systems Administrator II. [Doc. 11-2, ¶ 3]. During that time, Plaintiff's responsibilities included,

---

[4] To be fair, some of Plaintiff's responses to Defendant's Statement of Material Facts mentioned that she intended to file her own affidavit or declaration regarding some of the information in dispute. *See* [Doc. 21-1, ¶ 21]. Apparently, Plaintiff never followed through on those intentions.

[5] The vast majority of Plaintiff's responses do not comply with Local Rule 56. As such, the Court points out that it has deemed every fact in Defendant's Statement of Material Facts admitted with the exception of the six paragraphs where Plaintiff complied with Local Rule 56:  ¶¶ 18, 20, 30, 31, 35, & 37. [Doc. 21-1]. Of course, the Court is not including the facts to which Plaintiff agreed.

among other things, inputting user accounts, diagnosing problems with new software, and working with software vendors. [*Id*. at ¶ 7]. Melva Sullivent—Administrator of Technology—and Rose Powell—Chief Information Officer supervised Plaintiff. [*Id*. at ¶¶ 1, 3]. Throughout Plaintiff's tenure in this role, both Powell and Sullivent noted deficiencies in her performance. [*Id*. at ¶ 12]. Following these deficiencies, Sullivent and Powell decided to transfer Plaintiff to a new job. [*Id*. at ¶ 14]. This position included Plaintiff addressing specific issues on site at various schools within the district. [*Id*.]. Plaintiff's technical deficiencies didn't improve, and after a time in this new position, Sullivent's performance review of Plaintiff's work placed her in the bottom third of technicians. [*Id*. at ¶ 18].

In the midst of these performance problems, Plaintiff submitted a doctor's note regarding an issue with her knees. [*Id*. at ¶ 20]. The note provided that Plaintiff should neither climb ladders nor lift heavy objects. [*Id*.]. Defendant reviewed and granted "reasonable accommodations," including no use of ladders, no lifting of more than 10 pounds, and a five-minute break on an hourly basis. [Doc. 21-20]. Notwithstanding these requests, Plaintiff continued to struggle with the technical (as opposed to the physical) aspects of the job, receiving another low review in February 2019. [Doc. 11-2, ¶ 23]. And, Plaintiff was involved in at least two verbal altercations—first, using explicit language toward a member of custodial staff, and later raising her voice at a school principal. [*Id*. at ¶¶ 25–26]. Around this time, Plaintiff's supervisors learned that

Plaintiff started to use students to discharge her duties. [*Id*. at ¶ 28]. Powell and Sullivent ultimately decided to remove Plaintiff from the school environment and assigned her to the main technology office. [*Id*. at ¶ 34]. Plaintiff continued to be nonresponsive to her supervisors. [*Id*. at ¶ 35].

Because of her consistent and various deficiencies, Defendant placed Plaintiff on a 30-day plan, proscribed by Human Resources, in November 2019 to help her re-establish work competency. [*Id*. at ¶ 48]. This plan also failed, and Defendant then demoted Plaintiff to a different position. *See* [Doc. 11-4, ex. B]. It also reduced her hourly pay effective the following calendar year. [*Id*.].

Plaintiff responded by filing a charge with the Equal Employment Opportunity Commission. [Doc. 21-16]. On January 25, 2021, Plaintiff received a Right to Sue letter. [Doc. 1, ¶ 76].

### C.    <u>Summary-Judgment Standard</u>

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears

the initial responsibility of informing the court of the basis for its motion." *Four Parcels*, 941 F.2d at 1437. The movant may cite to particular parts of materials in the record, including, "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1)(A).[6] "When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 323). Rather, "the moving party simply may show—that is, point out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 324) (cleaned up). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

If this initial burden is satisfied, the burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does

---

[6] Courts may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

not satisfy its burden "if the rebuttal evidence 'is merely colorable or[] is not

significantly probative' of a disputed fact." *Josendis*, 662 F.3d at 1315 (quoting *Anderson*,

477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's

position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

Further, where a party fails to address another party's assertion of fact as required by

Federal Rule of Civil Procedure 56(c), the Court may consider the fact undisputed for

the purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences

from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

Succinctly put,

> [s]ummary judgment is not a time for fact-finding; that task is reserved for
> trial. Rather, on summary judgment, the district court must accept as fact
> all allegations the [nonmoving] party makes, provided they are sufficiently
> supported by evidence of record. So[,] when competing narratives emerge
> on key events, courts are not at liberty to pick which side they think is more
> credible. Indeed, if "the only issue is one of credibility," the issue is factual,
> and a court cannot grant summary judgment.

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (internal citations omitted).

Stated differently, "the judge's function is not himself to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for

trial." *Anderson*, 477 U.S. at 249. "The evidence of the [nonmovant] is to be believed, and

all justifiable inferences are to be drawn in his favor." *Id.* at 255. And "if a reasonable

jury could make more than one inference from the facts, and one of those permissible

inferences creates a genuine issue of material fact, a court cannot grant summary judgment"; it "must hold a trial to get to the bottom of the matter." *Sconiers*, 946 F.3d at 1263.

### D.    ADA and RA Claims

Because claims under the Rehabilitation Act are "governed by the same standards used in ADA cases," the Court discusses the two together. *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000). To establish a prima facie case of discrimination under the ADA, a plaintiff "must show: (1) he is disabled; (2) he is a qualified individual; (3) and he was subjected to unlawful discrimination because of his disability." *Holly v. Clairson Ind., LLC*, 492 F.3d 1247, 1255–56 (11th Cir. 2007). A qualified individual is someone who, "with or without reasonable accommodation, can perform the essential functions of the employment position[.]" *Id.* (quoting 42 U.S.C. § 12111(8)). It is clear that "if the individual is unable to perform an essential function of his job, even with an accommodation, he is, by definition, not a 'qualified individual.'" *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1229 (11th Cir. 2005).

#### 1.    Disability

First, Plaintiff must establish that she meets the definition of "disabled." Both the ADA and the RA define a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2). "Major life activities" include "functions such as caring for oneself [, . . .]

walking, seeing, [etc.]." 29 C.F.R. § 1630.2(i). And, Defendant really doesn't quibble that Plaintiff is disabled for purposes of the ADA and RA. *See* [Doc. 21-20]. As her doctor notes, she can't walk long distances, lift anything heavy, reach, climb ladders, etc. *See* [Doc. 21-16]. The Court finds she meets the first prong of her prima facie case.

### 2. <u>Qualified Individual</u>

The real dispute centers on whether Plaintiff is qualified to perform the job she was assigned. To succeed, Plaintiff must show that she can perform the necessary functions of the job, including any reasonable accommodations for any disabilities. *See Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000). Here, Plaintiff has not shown that she is a qualified individual who can perform the essential functions with or without a reasonable accommodation.

First, the Court must distinguish which functions are deemed essential to the role(s) that Plaintiff filled. Determining such essential functions include a case-specific analysis that gives deference to the employer's notation of what is essential. *See Holly*, 492 F.3d at 1257. In reviewing the job description for a Systems Administrator II, some of the essential functions include: troubleshooting and diagnosing technology hardware/software issues, completing assigned trouble tickets in a timely manner, providing technician training, lifting and/or moving up to 20 pounds occasionally, and climbing, walking, bending, etc.

In the briefs, the parties disagree on the essential functions that Plaintiff was

required to perform. For example, Defendant argues that Plaintiff was never qualified to be a System Administrator II. *See* [Doc. 11-1, p. 6]. In fact, Defendant claims that Plaintiff was not technically competent enough to even satisfy the role of a route technician. [*Id*.]. Defendant also argues that it determined "[Plaintiff] was unable to perform the essential functions of her job" well before Plaintiff ever mentioned any disability. [*Id*.].

On the other hand, Plaintiff seems to argue that, with the requested accommodations (no ladder climbing, assistance with heavy items, and a standing desk), she would be able to perform those necessary functions. Plaintiff's response brief primarily argues (rather conclusorily) that there is "at least a genuine issue of material fact as to whether Ms. Hall-Gordon could perform the essential functions of her job." [Doc. 21-1, p. 6].  In arguing that Plaintiff was qualified for all positions she has held, Plaintiff points to several performance reviews she deems supportive of her claims.

While it is true that every performance review wasn't 100% negative and included some statements one could even take as positive, every performance review nonetheless noted the same or similar things: Plaintiff did not (and apparently could not) satisfactorily fulfill the technical aspects of her job. For example, in her 2017–2018 evaluation, Plaintiff's review included that she was "scoring in the lower third on the skill assessment." [Doc. 21-6]. Defendant gave Plaintiff this review six months *prior to* her filing of a request for accommodation. *Compare* [Doc. 21-19] *with* [Doc. 21-6]. Well

before that review, Plaintiff's supervisor concluded that she could not adequately understand and control a new software, which required reassignment of her duties to another Systems Administrator II. *See* [Doc. 11-3, Sullivent Decl., ¶¶ 9–11]. Again, her supervisor noted that "although [Plaintiff] had a strong work ethic, she lacked the technical ability to succeed in a Systems Administrator II role." *See* [*id*. at ¶ 12].

Fast forward two years and nothing changed. In her February 2019 evaluation, Plaintiff's supervisor again noted "concerns about [Plaintiff's] job knowledge and ability to do the work in a timely manner." [*Id.* at p. 19]. Even more, Plaintiff was the only Systems Administrator II without the preferred "A+ Certification." *See* [*id.* at ¶¶ 35–37].

To rebut these claims of technical incompetence, Plaintiff argues that if she was not qualified, then she should not have received a "Proficient" rating on evaluations. *See* [Doc. 21-1, ¶ 23]. But that argument simply misses the mark.

Plaintiff's ADA/RA claim hinges on her allegations that Defendant never provided her with a reasonable accommodation that would have addressed her physical disabilities. However, she neither identified nor asked for any reasonable accommodation to make up for her lack of technical skills required to perform the job. In other words, Plaintiff never claimed that her physical disabilities prevented her from performing the technical aspects of her job. Defendant terminated her because she lacked the technical abilities to do the job—not because she couldn't lift 10 pounds,

needed a knee brace, or wanted a ladder. Again, those physical accommodations simply have nothing to do with her lack of technical skills.

Even accepting, *arguendo*, that Plaintiff exhibited the requisite technical skills, Defendant still granted the reasonable accommodations she requested. When an employee requests an accommodation, both the employee and employer must engage in a "reasonable process" to determine the appropriate accommodation. *Willis v. Conopco, Inc.*, 108 F.3d 282, 284 (11th Cir. 1997). Even though Plaintiff's job responsibilities included lifting heavy items and climbing ladders, Defendant granted the accommodations to allow Plaintiff to wear a knee brace, to have others lift the objects and reassign tickets requiring the use of a ladder to other technicians. *See* [Doc. 21-20]. Defendant denied Plaintiff's request for a standing desk because Plaintiff's job only included around 20 minutes of desk work per day. [Doc. 11-3, Sullivent Decl., ¶ 22]. In her deposition, Plaintiff admitted that she was allowed to wear a knee brace, was not required to lift more than 10 pounds, and does not recall having to climb a ladder after requesting those accommodations. [Doc. 11-5, Hall-Gordon Depo., pp. 31:7—32:23].

But importantly, Plaintiff cannot point to a reasonable accommodation that would have simultaneously helped her knee condition and increased her technical competency. If Defendant placed Plaintiff back in her previous position as Systems Administrator II and still afforded the same accommodations, the problems arising

from her inferior technical skills would not disappear.

Accordingly, the Court concludes that Plaintiff has not shown that she was a qualified individual who can perform the necessary functions of her job, even with her requested accommodations. This fatal omission ends Plaintiff's ADA/RA claims.

### 3.    Legitimate, Nondiscriminatory Reason

Notwithstanding the above conclusion and for the sake of thoroughness, the Court will nonetheless evaluate the remainder of Plaintiff's ADA case. After a plaintiff successfully establishes a prima facie case, the burden shifts to the employer to "articulate a legitimate, non-discriminatory reason" for the adverse action. *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001). In evaluating the proffered reason, great deference is given to the employer—so long as the reason does not include discrimination. To be sure, the employer can take adverse action against an individual for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984).

Defendant contends that it demoted Plaintiff and placed her into the records clerk role because of her "failure to complete multiple assigned projects, failure to respond to multiple communications from [Plaintiff's] supervisor, and failure to obtain A+ Certification by the designated timeline." [Doc. 11-5, Hall-Gordon Depo., ex. 12]. Before it demoted Plaintiff, Defendant placed her on a 30-day plan as an attempt to

reconcile the problems she was facing in the role. [Doc. 11-2, ¶ 48]. The plan did not

work, and Plaintiff still struggled (technically) to complete tasks. [Doc. 11-2, ¶ 49]. The

Court easily finds that Defendant put forward several legitimate and nondiscriminatory

reasons it demoted Plaintiff.

### 4.   <u>Pretext</u>

Even after a defendant carries its burden of articulating a legitimate, non-

discriminatory reason for the adverse action, a plaintiff has another chance to show

discriminatory motive. To do so, a plaintiff must produce evidence "sufficient to permit

a reasonable factfinder to conclude that the reasons given by the employer were not the

real reasons for the adverse employment decision." *Combs v. Plantation Patterns*, 106

F.3d 1519, 1528 (11th Cir. 1997). If a plaintiff fails to show enough evidence to create a

genuine issue of material fact as to each proffered reason, "[a] defendant is entitled to

summary judgment." *Chapman v. Al Transp.*, 229 F.3d 1012, 1024–25 (11th Cir. 2000) (en

banc).

Here, Plaintiff offers nothing as evidence of pretext. Rather, all Plaintiff offers to

contradict Defendant's proffered reasons is once again found in her Responses to

Defendant's Statement of Material Facts, stating: "Ms. Powell was motivated by

retaliatory motive based on [Plaintiff's] internal complaints concerning Ms. Powell's

refusal to provide a reasonable accommodation and [Plaintiff's] filing of a Charge of

Discrimination." [Doc. 21-1, p. 51]. Boiled down, Plaintiff argues that these reasons were

why Ms. Powell recommended Plaintiff be demoted. That textbook legal conclusion

misses a critical element: evidence of pretext. Mere speculation and conclusory

statements never establish pretext. *See Brown v. Snow*, 440 F.3d 1259, 1266 (11th Cir.

2006) (refusing to draw an unreasonable inference from speculative testimony).

Effectively, Plaintiff wants the Court to look back and consider the evidence she

presented at the prima facie phase and recycle it to infer pretext. However, a "plaintiff

may not [. . .] merely rest on the laurels of her prima facie case in the face of powerful

justification evidence offered by the defendant." *Grigsby v. Reynolds Metals Co.*, 821 F.2d

590, 596 (11th Cir. 1987). Instead, the plaintiff must "meet [the proffered reason] head

on and rebut it." *Wilson v. B/E Aerospace*, 376 F.3d 1079, 1088 (11th Cir. 2004). Plaintiff

has failed to carry that burden.[7]

Even more importantly, a plaintiff must meet the two-pronged test for pretext—

showing both the "reason was false, *and* that discrimination was the real reason." *St.*

*Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original). Plaintiff is far

from meeting that high standard. Accordingly, Plaintiff failed to establish a

discrimination claim under the ADA or RA.

---

[7] Interestingly, Plaintiff did not respond to Defendant's Material Fact 53, which says: "[The demotion letter] accurately reflects the reasons why Powell recommended that [Plaintiff] be demoted." *See* [Doc. 21-1, p. 51]. Not to replow this ground, but because Plaintiff failed to respond to Defendant's proffered fact, she forfeited any chance to controvert it. *See* LR 56, MDGa. So, her forfeit became an admission—an admission that the letter contained the true reasons for her demotion, none of which included discrimination based on her disability. This is tough to overcome.

E.    **Retaliation**

To establish a prima facie case of retaliation under the ADA, "a plaintiff must

show that (1) she engaged in statutorily protected expression; (2) she suffered an

adverse [. . .] action; and (3) the adverse action was causally related to the protected

expression." *Shotz v. City of Plantation*, 344 F.3d 1161, 1180 (11th Cir. 2003).

Defendant conceded the first two elements: Plaintiff engaged in statutorily

protected expression[8] and she suffered an adverse employment action. Importantly,

Plaintiff has not shown a causal connection between those two elements. To do so,

Plaintiff must show that "had she not [engaged in the protected conduct], she would

not have [faced adverse action]." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1135

(11th Cir. 2020) (en banc) (citing *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir.

2018)). In *Gogel*, the Eleventh Circuit was clear: "it is the plaintiff's burden to provide

evidence from which one could reasonably conclude that but for her alleged protected

act, her employer would not have fired her." *Id.* at 1135.

Instead of submitting evidence to show the required connection, Plaintiff

strangely points to Defendant's supposedly poor treatment of her retaliation claim in its

motion. *See* [Doc. 21, p. 9]. Specifically, Plaintiff complains that "[h]ad Defendant

---

[8] There seems to be some discord over which of Plaintiff's actions is properly considered as protected activity. *See* [Doc. 21, p. 8-9]. For purposes of this analysis, any of Plaintiff's actions would suffice (i.e., requesting accommodations, filing a complaint with the EEOC, etc.). *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998).

actually addressed the protected activities alleged in its Motion, then the causal

connection would be apparent." *Id*. In other words, Plaintiff basically argues that if the

Defendant—yes, the Defendant—would have more clearly laid out its arguments to

defeat the retaliation claim, then the Court would see just how connected it really is.

That "argument" completely butchers the burden-shifting process. It's not the

Defendant's job to make the Plaintiff's case. She—not Defendant—has the responsibility

of establishing the elements of her prima facie case. Thus, Plaintiff must show the causal

connection between the protected activity and the adverse action. *Shannon v. BellSouth

Telecomms., Inc.*, 292 F3d 712, 716 (11th Cir. 2002). Again, that causal connection must

show that the "desire to retaliate was the but-for cause of the challenged employment

action." *Hughes v. Wal-Mart Stores E., LP*, 846 F. App'x 854, 858 (11th Cir. 2021) (quoting

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)).

Here, Plaintiff does not clearly point to any causal connection between the

protected activity and her later demotion. Instead, giving her the benefit of the doubt,

Plaintiff apparently relies on nothing but the temporal proximity to provide an

inference of causation. Even if that is the case, Plaintiff still loses.

Temporal proximity requires a close timeframe between the protected activity

and the adverse action, allowing for an appropriate inference of retaliation. *See generally

Singleton v. Pub. Health Tr. of Miami-Dade Cnty.*, 725 F. App'x 736 738 (11th Cir. 2018).

However, to succeed in such a showing, the temporal proximity must be "very close."

20

*Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). And, the Eleventh

Circuit has clearly and consistently told us that a separation of three to four months just

isn't enough to show temporal proximity. *Id*. And without "other evidence tending to

show causation [. . .] the complaint of retaliation fails as a matter of law." *Id*.

With that in mind, Plaintiff last engaged in protected activity when she filed her

charge of discrimination with the EEOC on July 3, 2019. [Doc. 21, p. 9]. But, Defendant

didn't demote her until December 10, 2019—more than five months later. [Doc. 11-5,

Hall-Gordon Depo., ex. 12]. Under our Circuit precedent, that's too long to establish a

causal connection based on the temporal proximity between the two events. *See Bailey v.*

*City of Huntsville*, 517 F. App'x 857, 861 (11th Cir. 2013) ("[Plaintiff] has failed to show

causation based on temporal proximity alone, as a five-month time lapse is considered

too long under our precedent."). As such, and contrary to Plaintiff's contention

otherwise, she fails to show a causal connection, and that means she failed to establish a

prima facie case of retaliation.[9]

Accordingly, Plaintiff has not established a viable ADA retaliation claim.

**F.      FLSA Claims**

An unpaid overtime claim has two elements: the employee worked overtime,

---

[9] As with the ADA discrimination claim above, even accepting that Plaintiff has established a prima facie case, Defendant articulated a legitimate, non-retaliatory reason for the adverse action. Plaintiff has again failed to show pretext or offer evidence to overshadow the proffered reasons. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). Accordingly, even if Plaintiff's case passed the prima facie stage—which it does not—it would fail here.

and the employer knew or should have known of the overtime work. *Allen v. Bd. of Pub. Ed. for Bibb Cnty.*, 495 F.3d 1306, 1314–15 (11th Cir. 2007). Constructive knowledge can be shown when the employer has reason to believe that its employee is working beyond the shift. *Id.*

Here, the only evidence that Plaintiff offers to prove knowledge consists of a few references to notes from unidentified meetings. [Doc. 21-33, p. 1]; [Doc. 21-13, p. 2]; [Doc. 21-12]. These notes do not clearly point out who, if anyone, knew that Plaintiff supposedly worked overtime. Unlike other cases, Defendant did not encourage underreporting or ignore direct knowledge of overtime work. *See Bailey*, 776 F.3d at 801. Additionally, while the promulgation of a rule against overtime is not dispositive, it can be instructive as to the knowledge element. *See generally Reich v. Dep't of Conservation & Nat. Res.*, 28 F.3d 1076 (11th Cir. 1994).

Defendant has a clear policy against overtime without prior approval from a supervisor. [Doc. 11-3, Sullivent Decl., ¶ 52]. Even more, Plaintiff's supervisors informed her of the overtime provisions. [*Id.* at ¶ 53]. Plaintiff has not offered sufficient evidence to overcome these instructions and to show that her supervisor and Defendant knew of any overtime work.

Even more detrimental to Plaintiff's FLSA claim is the lack of any evidence regarding the "amount and extent [of work without compensation]." *Jackson v. Corrections Corp. of Am.*, 606 F. App'x 945, 952 (11th Cir. 2015). These evidentiary

requirements allow a reasonable factfinder to approximate hours worked for which Plaintiff seeks overtime compensation. *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1315 (11th Cir. 2013). While she doesn't have to provide a precise number, Plaintiff must produce some "evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Allen*, 495 F.3d at 1316. Unlike the aforementioned cases, Plaintiff has not offered any declarations, deposition testimony, or affidavits from herself or anyone else that speaks to the alleged overtime work.

To be sure, Defendant argued in its initial motion for summary judgment that Plaintiff had not produced any evidence to support an approximation of overtime hours or pay. [Doc. 11-1, p. 10]. But in response, Plaintiff only argued about Defendant's claim of exemption status and constructive knowledge. [Doc. 21, p. 10]. Even with this gentle nudge from Defendant, Plaintiff offered nothing in the way of evidence regarding her alleged missing overtime compensation. Accordingly, Plaintiff's FLSA claim fails to survive summary judgment.

G.     <u>Conclusion</u>

Based upon the foregoing, the Court **GRANTS** Defendant's Motion for Summary Judgment [Doc. 11]. The Clerk of Court will enter Judgment accordingly.

**SO ORDERED**, this 27th day of August, 2022.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**